**Timothy T. RYAN, Jr., and George M. Primm, Plaintiffs,**

v.

**The DuPAGE COUNTY JURY COMMISSION and Daniel J. Amati, Jury Administrator, Defendants.**

No. 92 C 6519.

United States District Court, N.D. Illinois, E.D.

Oct. 28, 1993.

---

Timothy T. Ryan, Jr., pro se.

George M. Primm, pro se.

Thomas F. Downing, DuPage County States Attorney's Office, Wheaton, IL, for defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

In this action brought under 42 U.S.C. § 1983, *pro se* plaintiffs George M. Primm and Timothy T. Ryan, Jr., both tried before juries in DuPage County, Illinois,[1] allege that defendants DuPage County Jury Commission and Daniel J. Amati (collectively "the jury commissioners") systematically excluded persons under 21 years of age, persons from lower income neighborhoods, non-Republicans, blacks and Hispanics from the county's jury pool. Defendants purportedly employed "an unknown computer program designed to 'target-out' these selected groups." Amended Complaint ¶ 16. This conduct is alleged to have violated plaintiffs' Fifth, Sixth, Seventh, and Fourteenth Amendment rights,[2] as

---

1. Primm was apparently tried for driving while under the influence of alcohol. We assume that Ryan was also tried for a crime because plaintiffs invoke the Sixth Amendment as a basis for this suit.

2. Plaintiffs fail to explain how their Fifth and Seventh Amendment rights have been violated by the jury commissioners' actions. The exclusion of certain "distinct groups," such as racial minorities, was originally viewed as violating the Equal Protection Clause, *see Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664 (1880), and more recently as violating the Sixth Amendment's fair cross-section venire requirement, *see, e.g., Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *Holland v. Illinois*, 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990). We therefore construe the complaint as alleging a violation of the Sixth Amendment.

well as an Illinois statute providing that the jury pool shall include the names of licensed drivers of the county. *See* 705 ILCS 310/1 (S.H.A.1992). Plaintiffs seek compensatory and punitive damages "in excess of $50,-000.00."

Before the court is the jury commissioners' motion to dismiss. The jury commissioners argue that (1) plaintiffs' allegations are argumentative and conclusory; (2) age does not constitute a "distinctive group" for purposes of the Sixth Amendment's fair cross-section requirement; (3) a violation of state law does not create a cause of action under 42 U.S.C. § 1983; (4) plaintiffs have waived their objections to the compositions of their juries; (5) defendants are entitled to quasi-judicial immunity. As explained below, the court denies the jury commissioners' motion.

## DISCUSSION

■■■ In considering a motion to dismiss, the court must accept all facts alleged in the complaint as true and must draw all reasonable inferences from the pleadings in plaintiff's favor. *See Gillman v. Burlington N.R.R. Co.,* 878 F.2d 1020, 1022 (7th Cir. 1989). Dismissal is appropriate " 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Kunik v. Racine County, Wis.,* 946 F.2d 1574, 1579 (7th Cir. 1991) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).

■■■ We easily dispose of the first three bases for dismissal. Contrary to the jury commissioners' contention, plaintiffs' allegations are not impermissibly argumentative or conclusory. As required by Federal Rule of Civil Procedure 8(a)(2), Ryan and Primm have provided "a short and plain statement of the claim." Their inability to explain the means by which defendants allegedly excluded certain groups from the jury pool—information presumably accessible only through the discovery process—does not warrant dismissal. *Cf. Leatherman v. Tarrant County*

*Narcotics Unit,* —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (refusing to apply a heightened pleading standard to a § 1983 action against a municipality). Moreover, while the jury commissioners are correct that persons between the ages of 18 and 21 do not comprise a distinct group for purposes of the Sixth Amendment's fair cross-section requirement, *see Davis v. Greer,* 675 F.2d 141, 146 (7th Cir.), *cert. denied,* 459 U.S. 975, 103 S.Ct. 310, 74 L.Ed.2d 289 (1982); *Silagy v. Peters,* 905 F.2d 986, 1010–11 (7th Cir.1990), *cert. denied,* 498 U.S. 1110, 111 S.Ct. 1024, 112 L.Ed.2d 1106 (1991), plaintiffs do allege the exclusion of distinct groups— racial minorities—from the venire. Finally, although a violation of state law is not cognizable under § 1983, *see Archie v. City of Racine,* 847 F.2d 1211, 1216 (7th Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989), we construe plaintiffs' state law claim as pendent to the § 1983 claim for violation of the Sixth Amendment.

### *Waiver of the Jury Pool Challenges*

[6] Under Illinois law, "[a]ny objection to the manner in which a jury panel has been selected or drawn shall be raised by a [written] motion to discharge the jury panel prior to voir dire examination." 725 ILCS 5/114–3(a).[3] In *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), the Supreme Court held that a criminal defendant's failure to follow a similar state rule prescribing the manner of challenging the jury pool barred a subsequent habeas petition based on the fair cross-section requirement, absent a showing of cause and prejudice. The decision in *Francis* was guided by principles of comity and federalism: " 'the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, [must] always [endeavor] to do so in ways that will not unduly interfere with the legitimate activities of the States.' " *Francis,* 425 U.S. at 541–42, 96 S.Ct. at 1711 (quoting *Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971)).

---

**3.** If the trial court, in deciding such a motion, "finds that the jury panel was improperly selected or drawn the court shall order the jury panel discharged and the selection or drawing of a new panel in the manner provided by law." 725

ILCS § 5/114-3(d). A trial judge's refusal to dismiss a panel after a § 5/114-3(a) objection would be appealable, and the remedy would presumably be a new trial before a jury selected from a properly drawn venire.

Relying on *Francis*, the jury commissioners maintain that because Ryan and Primm failed to make written motions challenging the jury pool before voir dire they have waived their Sixth Amendment objections.

 *Francis* is inapposite because this is not a habeas petition. Ryan and Primm, rather than directly challenging their convictions, seek damages for the jury commissioners' alleged conduct in compiling an unrepresentative jury pool. *See Haring v. Prosise*, 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983) (a prisoner who pled guilty and was convicted may still bring a § 1983 damages action against police officers whose conduct contributed to his conviction).[4] Because the relief they seek is not akin to that provided by the habeas statute, and because § 1983—unlike the habeas statute—has no exhaustion requirement, Ryan and Primm may bring this damages action in federal court even though they did not pursue state remedies. *See Smith v. Springer*, 859 F.2d 31, 34 (7th Cir.1988); *Viens v. Daniels*, 871 F.2d 1328, 1331 (7th Cir.1989).[5]

### Quasi–Judicial Immunity

 "Auxiliary judicial personnel who perform functions at once integral to the judicial process and nonmechanical [or discretionary] are entitled to absolute immunity from damages liability for acts performed in the discharge of those functions, just as judges are." *Scruggs v. Moellering*, 870 F.2d 376, 377 (7th Cir.1989), *cert. denied*, 493 U.S. 956, 110 S.Ct. 371, 107 L.Ed.2d 357 (1990). The Supreme Court recently explained why quasi-judicial immunity applies only to nonmechanical or discretionary acts, rather than ministerial ones:

> The doctrine of judicial immunity is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability. Accordingly, the "touchstone" for the doctrine's applicability has been "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." When judicial immunity is extended to officials other than judges, it is because their judgments are "functional[ly] comparab[le]" to those of judges—that is, because they, too, "exercise a discretionary judgment" as a part of their function.[6]

*Antoine v. Byers & Anderson, Inc.*, —— U.S. ——, ——, 113 S.Ct. 2167, 2171, 124 L.Ed.2d 391 (1993) (citations omitted). Applying this standard, the Court held that a court reporter, who had delayed an appeal of a bank robbery conviction by failing to provide the criminal defendant with a trial transcript,

---

4. As to the proper measure of damages, a constitutional violation does not warrant an award of compensatory damages if the injured party would have suffered the same injury had the alleged constitutional deprivation not occurred. *Smith v. City of Chicago*, 913 F.2d 469, 472–73 (7th Cir.1990). In order to recover more than nominal damages (such as $1.00), Ryan and Primm would presumably need to show both that the composition of the jury pool violated the Sixth Amendment, and that juries drawn from a properly compiled pool would not have convicted them. *See id.*

5. In addition to rejecting defendants' waiver argument, we note that the state court actions do not have any preclusive effect on this § 1983 case. *See Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (state criminal action may have preclusive effect on a § 1983 case). In determining the preclusive effect of a state court judgment, the federal court looks to state law. *Haring*, 462 U.S. at 314, 103 S.Ct. at 2374. Collateral estoppel would not bar this action because plaintiffs never litigated their Sixth Amendment challenges in state court. *St. Paul Fire & Marine Ins. Co. v. Downs*, 247 Ill. App.3d 382, 187 Ill.Dec. 130, 133, 617 N.E.2d 338, 341 (1st Dist.1993) ("[T]he doctrine of collateral estoppel applies and operates as a bar in the subsequent action as to the question, and only that question, actually determined in the prior suit and not as to other matters which might have been litigated and determined.") Res judicata does not bar this action, even though plaintiffs could have objected to the composition of the jury pool prior to their criminal trials, because the parties here are not the same as those in the state court actions. *See Lim v. Central DuPage Hosp.*, 972 F.2d 758, 762–63 (7th Cir.1992) (the elements of res judicata are (1) identity of the parties or their privies, (2) an identity of the causes of action, and (3) a final judgment on the merits). The jury commissioners are not in privity with the state prosecutors.

6. Indeed, judges are not entitled to absolute immunity when they act in their administrative capacity. *See Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988).

was not entitled to quasi-judicial immunity. Quasi-judicial immunity did not apply, even though the court reporter is integral to the judicial process, because the job of recording verbatim court proceedings involves no discretion.

 Similarly, in light of certain provisions of the Illinois Jury Commission Act, 705 ILCS 310/0.01 *et seq.*, the DuPage County jury commissioners do not exercise discretion in compiling the jury pool. In a county with a population of less than three million,[7] "the jury commissioners upon entering upon the duties of their office, and each year thereafter, shall prepare a list of all Illinois driver's license holders and all registered voters of the county to be known as the jury list." 705 ILCS 310/1. The active or periodic jury lists "shall be prepared by selecting every twentieth name, or other whole number rate necessary to obtain the number required ... from the general jury list." 705 ILCS 310/8.[8] These provisions indicate that the jury commissioners do not make judgments functionally comparable to those of judges; compiling the jury pool does not appear to involve the exercise of discretionary judgment.

 It may be that custom or court rules promulgated under the Jury Commission Act give the jury commissioners more discretion in revising or amending the general jury list than is apparent from the above cited provisions, making quasi-judicial immunity more plausible.[9] The second paragraph of 705 ILCS 310/2 provides that the "jury list may be revised and amended annually in the discretion of the commissioners." It is not clear what revising and amending the list entails. Deciding, without the aid of a more developed record, that this provision gives the commissioners judge-like discretion is inappropriate on this motion to dismiss. Accordingly, we decline at this time to grant quasi-judicial immunity to the jury commissioners.

## CONCLUSION

Defendants' motion to dismiss is denied. Defendants shall answer the complaint by November 19, 1993. The case is set for a status hearing on November 30, 1993, at 9:45 a.m. to establish a discovery schedule.

---

7. The court takes judicial notice of the 1990 census finding DuPage County to have a population of 781,666. *See City Smarting From Decline While Collar Areas Boom,* Crain's Chicago Business, July 1, 1991, at F4.

8. While the "jury commissioners shall also have the power to summon electors to appear before them and to examine them touching their qualifications for jury service," 705 ILCS 310/3, plaintiffs do not allege that certain groups were excluded from the jury pool in this manner.

9. If the jury commissioners indeed exercised the necessary discretion, quasi-judicial immunity would be appropriate because selecting those who will serve as triers of fact is clearly a function necessary for "resolving disputes between parties" or "authoritatively adjudicating private rights." *See Newsome v. Daley,* No. 84 C 4996,

1987 WL 9311 *1, 1987 U.S.Dist. LEXIS 2869, *2 (N.D.Ill. March 30, 1987) (the jury commission's "acts are in aid of the court and are an integral part of the judicial process").

We also note that the jury commissioners might be entitled to quasi-judicial immunity even if, instead of exercising their own discretion, they had followed judges' discretionary orders regarding the compilation of the jury pool. Court officials who "'act at the behest of a judge or pursuant to court order are entitled to absolute quasi-judicial immunity from suit as to those actions.'" *Kincaid v. Vail,* 969 F.2d 594, 601 (7th Cir.1992) (quoting *Forte v. Sullivan,* 935 F.2d 1, 3 (1st Cir.1991)). It would be unfair to grant the judges immunity for determining whom to include in the jury pool but to hold liable the jury commissioners who carry out the judges' orders. *See id.*